# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| **INSIDESALES.COM, INC.,**<br><br>     Plaintiff,<br><br>vs.<br><br>**SALESLOFT, INC.,**<br><br>     Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:16CV859DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant SalesLoft's Motion to Dismiss Based On Unpatentability Under 35 U.S.C. § 101 and SalesLoft's Motion to Dismiss Based On FRCP 12(b)(6). On April 4, 2017, the court held a hearing on the motions. At the hearing, Plaintiff was represented by Paul B. Gaffney and Samuel C. Straight, and Defendant was represented by Karineh Khachatourian, and H. Dickson Burton. The court took the motions under advisement. After carefully considering the parties' memoranda and the law and facts relevant to the pending motions, the court issues the following Memorandum Decision and Order.

## BACKGROUND

This is a patent infringement case involving "sales acceleration" software. InsideSales' patented Vision software is used by sales representatives to track the unique email and website behavior of sales leads, which provides insight into whether those leads are likely to be interested in making a purchase.

Vision builds upon the tracking technology developed for internet marketing and sales in the 1990s. The prior technology permitted a company to send tracked mass emails to potential

customers and identify at a rudimentary level who was opening those emails, who was clicking on the links to the emails, and what portions of the company's website were being visited. The prior technology, however, did not allow individual sales representatives to track the behavior of individual sales leads in response to their own emails sent from their own email program, such as Microsoft Office.

iHance, a predecessor of InsideSales, built the first version of Vision in 2001 to allow sales representatives to use their own regular email program to correspond with potential customers while also tracking that email correspondence to see if and when it was opened, whether the recipient visited the company's website, and what sections of the website the recipient visited. iHance obtained two patents in connection with the Vision software: (1) United States Patent No. 7,072,947 ("'947 patent"), titled "Method and System for Monitoring E-Mail and Website Behavior of an E-Mail Recipient," which issued on July 4, 2006; and (2) United States Patent No. 7,076,533 ("'533 patent"), also titled "Method and System for Monitoring E-Mail and Website Behavior of an E-Mail Recipient," which issued July 11, 2006.[1]

The United States Patent and Trademark Office ("PTO") has re-examined both patents. On September 15, 2009, the PTO issued Ex Parte Reexamination Certificate 7,033, confirming the patentability of all claims in the '947 patent. On April 26, 2011, the PTO issued Ex Parte Reexamination Certificate 8,183, confirming the patentability of all claims in the '533 patent.

SalesLoft was formed in 2014 and began offering for sale a system for monitoring email and web behavior called "Cadence." One embodiment of the Cadence system uses an Outlook-based plug-in. Customers can send emails from their email program and then track the email and

---

[1] InsideSales acquired iHance in May 2014 and is the assignee of the '947 patent and the '533 patent.

the website behavior of the recipient.  SalesLoft also offers a browser extension that enables email and web-behavior monitoring from emails sent from a Gmail account.  InsideSales contends that SalesLoft's products infringe the '947 and '533 patents and that it has lost sales and revenue from SalesLoft's alleged infringement.

## DISCUSSION

### 35 U.S.C. § 101 Motion to Dismiss

SalesLoft brings this motion to dismiss, arguing that the '947 patent and '533 patent are invalid as a matter of law under 35 U.S.C. § 101 because they do not claim patent-eligible inventions.  To be eligible for a patent, a claimed invention must be directed to a patentable subject matter as defined in 35 U.S.C. § 101.  Patentable subject matter means a "new and useful process, machine, manufacture or composition of matter, or any new and useful improvement thereof."  *Id.*  Section 101 has an expansive definition of patentability and Congress intended patent laws to "be given wide scope.'  *Diamond v. Chakrabarty*, 447 U.S. 303, 308-09 (1980).

However, there are exceptions to patentability.  The Supreme Court has made clear that abstract ideas are not patentable.  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2350 (2014); *Bilski v. Kappos*, 561 U.S. 593, 594 (2010).  Abstract ideas are fundamental concepts that belong to everyone and cannot be patented without a sufficient inventive concept to transform the abstract idea into a patent eligible invention.  *Alice*, 134 S. Ct. at 2350-51.

Courts employ a two-step framework to distinguish abstract ideas "from patent-eligible applications of those concepts."  *Id.* at 2355.  First, a court must determine whether the claims at issue are directed at an "abstract idea."  *Id.*  If so, the second step asks whether the claims contain an "inventive concept": "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept

itself." *Id.* The accused infringer bears the burden of proof on both steps.

The exclusion for abstract ideas is applied narrowly. *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289, 1293 (2012). "[T]oo broad an interpretation of this exclusionary principle would undermine patent law," because "all inventions at some level, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* Courts, therefore, have been directed to "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice*, 134 S. Ct. at 2354.

In this case, SalesLoft argues that the claimed invention is not patentable because it merely claims the abstract idea of email tracking and delivery notification. SalesLoft contends that this is the same idea reflected in long-standing practice of certified mail–tracking the message and notifying the sender that the recipient has received it–just applied in the Internet context. Several recent cases have found that "longstanding commercial practices" are too abstract to patent, *Bilksi*, 561 U.S. at 611, even when those ideas are applied in the technological environment. *Intellectual Ventures 1 LLC v. Capitol One Bank*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

InsideSales contends that by characterizing the patents as certified mail in the Internet context, SalesLoft completely mischaracterizes the patents. Nowhere do the patents claim delivery notification for email. Rather, the patents claim something far more valuable: systems and methods that provide notice when a sent email has been opened, not just delivered. In addition, the systems and methods can identify whether the recipient clicks on an embedded hyperlink and monitor where and for how long the recipient visits specific portions of the website. This type of information for a salesperson is not a longstanding business practice.

Certified mail or return-receipt delivery only notifies the sender that the mail was

4

delivered, not opened or acted upon.  SalesLoft's abstract idea challenge is without merit as there is no credible argument that a patent on a system and methods for "monitoring website activity" claims a longstanding commercial practice.  The functionalities claimed in the patents were not imaginable before the Internet.  Even after email came into use, the functionality claimed in the patents did not exist until plaintiff's invention solved the technical problems associated with how email normally worked.

Federal Circuit law is clear in rejecting § 101 challenges where a patent's "claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."  *DDR Holdings, LLC v. Hotels..com, LP*, 773 F.3d 1245, 1247 (Fed. Cir. 2014).  Inventions that "provide[] an Internet-based solution to solve a problem unique to the Internet" are not unpatentable abstract ideas.  *Capitol One*, 792 F.3d at 1371.

In this case, the patents-in-suit overcame the problem of finding out whether a user opened an email or clicked on a link within the email.  Those are problems confined to the Internet, and the patents provide Internet-based solutions.

SalesLoft cites to many cases being invalidating patents after the *Alice* decision.  However, these cases do not involve the same kind of claimed technology.  Cases involving patents that when stripped of computer or Internet jargon reveal a familiar business practice, not a technical solution to an Internet-centric problem or opportunity, are not particularly relevant.  Based on the allegations of the Complaint and viewing all inferences in favor of InsideSales, the court determines at this motion to dismiss stage that the patents-in-suit are not based on abstract ideas.

Because the court concludes that the patents are not based on abstract ideas, there is no

5

need to consider the second step in the *Alice* analysis. However, were there, the court believes that such a determination would be difficult for SalesLoft to establish at the motion to dismiss stage. The *Alice* decision was made at the summary judgment stage whereas the present case is at the motion to dismiss stage. Therefore, rather than marshaling all the evidence obtained through discovery and claim construction, SalesLoft must rely on the factual allegations of the Complaint, with all inferences drawn in a light most favorable to InsideSales, to establish ineligibility. Although "Courts may . . . dispose of patent-infringement claims under § 101 whenever procedurally appropriate," *Bascom Global Internet SErvs., v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016), "it will ordinarily be desirable–and often necessary–to resolve claim construction disputes before a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012).

      InsideSales contends that SalesLoft has not reasonably disputed that the individual claim elements, or their ordered combination, are sufficient to ensure that the patents in practice amount to significantly more than a patent upon the ineligible concept itself. The arrangements of multiple pieces of software, or control logic, disclosed and claimed in both patents-in-suit are the inventive concepts that satisfy the second step of the § 101 inquiry. Prior to the invention, some monitoring of the behavior of email recipients was possible, provided that the tracked emails were sent using specialized tools. But these tools were incompatible with a sales representatives typical email program, such as Microsoft Outlook or Gmail. The patents created a solution that operates without the need for specialized mass mail software. InsideSales further asserts that numerous details in the specification contradict SalesLoft's assertions that these pieces of control logic are generic computer components or devoid of technical explanation.

Modifying an email sent by an email client in the specified manner directed by the claims solves a technical challenge. The law is clear that where "generic components operate in an unconventional manner to achieve an improvement in computer functionality," the subject matter is patent eligible under § 101. *Amdocs*, 841 F.3d 1288 (Fed. Cir. 2016). Claims are eligible for protection when the ordered combination of their elements, taken together, harness the claimed technology to solve a technical problem in a non-routine, unconventional way. *DDR Holdings*, 773 F.3d at 1259.

Because the court must accept the well-pleaded factual allegations of the Complaint as true and construe them in the light most favorable to InsideSales, the court concludes that SalesLoft has not proven the patents-in-suit to be patent ineligible under § 101. Therefore, SalesLoft's motion to dismiss is denied.

## FRCP 12(b)(6) Motion to Dismiss

SalesLoft argues that InsideSales' Complaint for Patent Infringement fails to meet the pleading standards articulated by the Supreme Court in *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In particular, SalesLoft contends that InsideSales' Complaint for Patent Infringement does not sufficiently inform SalesLoft of what it must defend and fails to contain sufficient factual allegations to establish if the patent infringement claim is plausible.

However, the Complaint identifies and describes the patents and identifies SalesLoft's products that practice the claims. The Complaint specifically identifies that SalesLoft sells "a system for monitoring email and web behavior called 'Cadence,'" which uses Outlook, and a "browser extension that enables the monitoring of emails and web behavior from emails sent from a Gmail account." Where a complaint identifies the defendant's "products and alleg[es]

7

that they perform the same unique function as Plaintiff's patented system," it passes muster under Rule 8. *InCom Corp. v. Walt Disney Co.*, 2016 U.S. Dist. LEXIS 71319, at *8 (C.D. Cal. Feb. 4, 2016).

This is not a Complaint pleaded according to the eliminated Form 18. InsideSales is asserting patents that protect its products and that have survived PTO reexamination. The Complaint meets Rule 8 requirements and asserts a plausible claim of infringement. SalesLoft incorrectly asserts that courts uniformly require complaints to allege infringement of particular claim limitations. Several courts have rejected that position. *InCom,* 2016 U.S. Dist. LEXIS 71319 at *8; *Telebrands Corp. v. Ragner Tech Corp*, 2016 U.S. Dist. LEXIS 114436m at *10 (D.N.J. Aug. 25, 2016) ("[T]he Court rejects Telebrands' invitation to make claim identification a requirement under Federal Rule of Civil Procedure 8(a) for every patent-infringement complaint given a review of the persuasive case law.").

SalesLoft has received at least as much detail as the defendant received in *InCom*. Noting that most patent complaints require "discovery to flesh out the basis for each party's contentions," the Local Patent Rules require the parties "to provide the particulars behind the allegations of infringement . . . at an early date." That process is underway. InsideSales' Disclosure of Accused Instrumentalities was served December 8, 2016, and identified specific SalesLoft products and detailed how these products infringe at least claim 1 of both patents-in-suit. InsideSales then served Initial Disclosures on December 22, 2016, which included a document production of 320,000 pages. SalesLoft would have received even more detailed infringement contentions by early February under the Local Patent Rules if SalesLoft had served its own Initial Discosures by December 29, 2016 as it was required to do under the rules. Instead, SalesLoft unilaterally decided that its pending motions to dismiss suspended any

obligation to comply. In any event, courts have looked to the impending exchange of detailed contentions as grounds for denying motions of this sort. *Windy City Innovations v. Microsoft Corp.*, 2016 WL 3361858, at *5 (N.D. Cal. June 17, 2016).

With respect to secondary liability claims, the fact that no third-party direct infringer is currently identified is not a basis for dismissing any part of the Complaint. "To state a claim for indirect infringement . . . a plaintiff need not identify a specific direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012). Allegations of infringing products and the use of those products by SalesLoft's customers are sufficient to "allow an inference that at least one direct infringer exists." *Id.* at 1336.

In addition, the majority rule rejects SalesLoft's argument that the inducement theory should be dismissed because there is no allegation that SalesLoft knew about the patents "prior to the lawsuit." *See Windy City Innov.*, 2016 WL 3361858, at *18-19. "[P]ost suit knowledge is sufficient to sustain a finding that defendant had the requisite knowledge to support claims for indirect infringement." *Id.*

Finally, the argument that contributory infringement requires allegations negating the existence of substantial non-infringing uses ignores that this fact can be inferred from the facts that are alleged. *CAO Group, Inc. v. Sybron Dental Specialties, Inc.*, 2014 WL 119134, at *2 (D. Utah Jan. 10, 2014). Therefore, the court concludes that there are no deficiencies that justify dismissal of any part of the Complaint.

**CONCLUSION**

Based on the above reasoning, Defendant SalesLoft's Motion to Dismiss Based On Unpatentability Under 35 U.S.C. § 101 [Docket No. 26] is DENIED and SalesLoft's Motion to

Dismiss Based On FRCP 12(b)(6) [Docket No. 28] is DENIED.

DATED this 13th day of June, 2017.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge